UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON HUTNICK, | No. 2:12-cv-2243 AC |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XIV of the Act. The parties' cross motions for summary judgment are pending. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and will deny defendant's motion for summary judgment.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI on July 13, 2005, alleging disability beginning on May 1, 2005. Administrative Record ("AR") 118-20, 121-24. Plaintiff's applications were denied initially in November 2005 and again upon reconsideration in May 2006. AR 79-83, 91-96. On September 12, 2007, a hearing was held before administrative law

judge ("ALJ") Peter F. Belli.  AR 28-72.  Plaintiff appeared with attorney representation at the hearing, at which he, his mother, Christina Gunsolley, and a vocational expert, David Dettmer, testified.  See id.  In a decision dated October 26, 2007, the ALJ issued an unfavorable decision finding plaintiff not disabled.  AR 14-27.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on March 28, 2008, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 2-5.

On May 28, 2008, plaintiff initiated a federal action seeking review of the denial of his applications.  Hutnick v. Comm'r of Soc. Sec., 2:08-cv-1171 DAD.  On September 30, 2009, Magistrate Judge Dale A. Drozd granted plaintiff's motion for summary judgment, finding that the ALJ failed to articulate proper reasons for not crediting the opinion of examining psychologist, Dr. Alan Brooker, and for failing to properly credit plaintiff's testimony and that of his mother's concerning the nature and extent of plaintiff's functional limitations.  The decision of the Commissioner was therefore reversed and the matter was remanded for further proceedings.

On remand, three supplemental hearings were held with ALJ Belli presiding.  See AR 373-78 (March 9, 2010), 379-439 (September 16, 2010), and 439-58 (March 30, 2011).  On April 28, 2011, the ALJ issued a new decision, again denying plaintiff's applications for benefits.  AR 260-75.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2.  The claimant has not engaged in substantial gainful activity since May 1, 2005, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: cognitive disorder, depressive disorder, borderline intellectual functioning, and seizure disorder secondary to history of closed head injury.
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.  After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following

>non-exertional limitations: he is unable to climb ladders, ropes, or scaffolds; he is unable to work at unprotected heights or around unprotected hazardous machinery; he is unable to work for more than eight hours per day; he has slight limitations in the ability to understand, remember, and carry out short, simple instructions; his ability to receive, understand, and carry out detailed job instructions is moderately limited; his ability to make judgments on simple work-related decisions is slightly limited; his ability to make judgments on detailed work-related decisions is moderately limited; his ability to interact appropriately with the public is moderately limited, allowing for occasional exposure to the public; his ability to interact appropriately with supervisors and coworkers is slightly limited; his ability to respond appropriately to work pressures in a usual work setting is slightly limited; his ability to respond appropriately to changes in a routine work setting is slightly limited; and his ability to maintain attention and concentration to tasks is slightly limited.
>
>6.   The claimant is capable of performing past relevant work as a cashier, housekeeper, and dietary aide.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
>7.   The claimant has not been under a disability, as defined in the Social Secur0ity Act, from May 1, 2005, through the date of this decision.

AR 263-74

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on June 27, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 251-53.

## FACTUAL BACKGROUND

Born on October 25, 1975, plaintiff was 29 years old on the alleged onset date of disability and 34 years old at the time of the administrative hearing following remand from this court.  AR 385.  Plaintiff completed high school as a special education student and attended community college for two years to learn welding.  Id. 234.  He last worked as a janitor, a housekeeper, and a dietary aid.  Id. 425-26.

In 1988, when he was twelve years old, plaintiff was riding his bicycle when he was struck by an automobile.  AR 232.  This accident resulted in rib fractures, nasal fracture, skull fracture, and severe traumatic brain injury followed by a 10-day coma, hospitalization beyond one month, and extensive rehabilitation.  Id.

////

LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec' y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The court will not reverse the Commissioner's decision if it is based on harmless error,

which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

Plaintiff seeks summary judgment on the grounds that: (1) the ALJ failed to find that plaintiff's mental impairment met or equaled the criteria under the Listing of Impairments ("Listings") 12.05(C); (2) the ALJ rejected opinion evidence he purported to credit and rejected the opinion of an examining psychologist without a legitimate basis for doing so; (3) the ALJ failed to credit plaintiff's and third party testimony as to the nature and extent of his functional limitations; and (4) the ALJ failed to properly assess plaintiff's residual functional capacity and failed to properly credit the testimony of the vocational experts in response to hypothetical questions that reflected plaintiff's limitations. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free from legal error.

As explained more fully below, the court concludes that the Commissioner's decision must be reversed and the case remanded for an award of benefits, because the ALJ erroneously found that plaintiff does not meet the listing for mental retardation. The court accordingly need not address plaintiff's other challenges to defendant's decision.

A.   Listing 12.05(C)

At step three of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in the Appendix to federal regulations.[1] 20 C.F.R. § 416.920(d). Conditions set forth in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995) (emphasis added). The Listings were

---

[1] The Appendix containing the listed impairments appears in the Regulations at 20 C.F.R., Pt 404, Subpt. P, App. 1.

1  "designed to operate as a presumption of disability that makes further inquiry unnecessary."

2  Sullivan v. Zebley, 493 U.S. 521, 532 (1990). If a claimant shows that his impairments meet or

3  equal a Listing, he will be found presumptively disabled. 20 C.F.R. §§ 416.925-416.926; see

4  Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1221-22 (9th Cir. 2010).

5        The claimant bears the burden of establishing a prima facie case of disability under the

6  Listings. See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). To "meet" a listed

7  impairment, the claimant must establish that his condition satisfies each element of the listed

8  impairment. See Zebley, 493 U.S. at 530; Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

9  1999). To "equal" a listed impairment, the claimant "must establish symptoms, signs, and

10  laboratory findings" at least equal in severity and duration to each element of the listed

11  impairment. Id. at 1099-1100.

12        Plaintiff contends that the evidence establishes that his impairment meets or equals the

13  criteria of Listing 12.05(C). Under Listing 12.05(C), plaintiff must be found disabled if he shows

14  the following:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairments before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ....
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

23  20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05.

24        At the third step of the sequential evaluation process, the ALJ determined as follows:

> As for the "paragraph B" and "paragraph C" criteria, they are not met because the claimant does not have a valid verbal, performance or full scale IQ of 59 or less.[2] While the claimant registered

---

[2] In the Commissioner's cross-motion for summary judgment, it is claimed that the ALJ erred in (continued…)

6

> borderline IQ scores during an April 2010 psychological evaluation, the claimant has twice registered scores exceeding 83 during two prior evaluations. Furthermore, as discussed in Finding 5, the claimant's additional physical and mental impairments, while severe, do not impose "significant" limitations as contemplated by the listing.

AR 268.

### 1. Valid IQ Score

The first prong of Listing 12.05(C) requires a valid verbal, performance, or full scale IQ of 60 through 70. Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1986). In this case, Dr. Michael Molyn assessed the following IQ scores in September 2005: Verbal IQ of 86, Performance IQ of 100, and Full Scale IQ of 91. AR 207. In September 2007, Dr. Alan Brooker assessed the following IQ scores: Verbal IQ of 82, Performance IQ of 99, and Full Scale IQ of 88. AR 237. And in April 2010, Dr. Kara Cross assessed the following IQ scores: Verbal IQ of 72, an unclear Performance IQ, and a Full Scale IQ of 70.[3] AR 357-58. Thus, only one of the assessed IQ scores—Dr. Cross's April 2010 Full Scale IQ of 70—falls in the range contemplated by Section 12.05(C).

Courts in the Ninth Circuit have held that where multiple or conflicting IQ scores are available, the operative score for purposes of determining whether a claimant's impairments meet or equal Listing 12.05(C) is the lowest "valid verbal, performance, or full scale IQ" score the claimant has received. See Fanning, 827 F.2d at 633 (holding that where a claimant underwent IQ tests in both 1982 and 1983, higher scores obtained in 1983 did not render lower scores obtained in 1982 invalid for purposes of listing 12.05(C)); Ray v. Chater, 934 F. Supp. 347, 350 (N.D. Cal. 1996) (finding that "it can be inferred that when multiple IQ scores are available the Regulations prefer the lowest score"); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test

---

asserting that a score of 59 or less was necessary pursuant to Listing 12.05(C). The court finds no error because the ALJ was clearly discussing both paragraph B and paragraph C of Listing 12.05. Under Listing 12.05(B), a plaintiff must show a valid verbal, performance or full scale IQ of 59 or less, while under Listing 12.05(C), the IQ score may be between 60 and 70.

[3] The ALJ gave Dr. Cross's opinion significant weight. AR 270.

7

1 administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler

2 series, we use the lowest of these in conjunction with 12.05."). Accordingly, Dr. Cross's April

3 2010 assessed Full Scale IQ of 70 constitutes substantial evidence that plaintiff meets the first

4 prong of Listing 12.05(C).

5     2.    <u>Additional Impairment</u>

6 Listing 12.05(C) further requires that plaintiff has "a physical or other mental impairment

7 imposing an additional and significant work-related limitation of functioning." 20 C.F.R. Pt. 404,

8 Subpt. P., App. 1 § 12.05(C). The ALJ determined that plaintiff had the following severe

9 impairments at the second step of the sequential evaluation process: cognitive disorder,

10 depressive disorder, borderline intellectual functioning, and seizure disorder secondary to history

11 of closed head injury. A finding of a severe impairment at the second step is a per se finding of

12 an "impairment imposing additional and significant work-related limitations of function" as

13 defined in the second prong of Listing 12.05(C). See <u>Fanning</u>, 827 F.2d at 633; <u>Huber v. Astrue</u>,

14 10-cv-8043 PCT DGT, 2010 WL 4684021, at *2 (D. Ariz. Nov. 12, 2010); <u>Rowens v. Astrue</u>,

15 2:09-cv-0163 GGH, 2010 WL 3036478, at *3 (E.D. Cal. Aug. 2, 2010) ("[I]n this circuit, a

16 person who has a severe physical or other mental impairment, as defined at step two of the

17 disability analysis, apart from the decreased intellectual function, meets the second prong of the §

18 12.05(C) listing."); <u>Campbell v. Comm'r. of Soc. Sec.</u>, 1:09-cv-0465 GSA, 2011 WL 444783, at

19 *18 (E.D. Cal. Feb. 8, 2011); see also <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997);

20 <u>Edwards v. Heckler</u>, 736 F.2d 625, 629-31 (11th Cir. 1984); <u>Nieves v. Sec'y of Health & Human

21 Servs.</u>, 775 F.2d 12, 14 n.7 (1st Cir. 1985).

22 The fact that a severe impairment imposes significant work-related limitations of function

23 is particularly evident when considering the Social Security Administration's definition of a

24 severe impairment at the second step: "You must have a severe impairment. If you do not have

25 any impairment or combination of impairments which significantly limits your physical or mental

26 ability to do basic work activities, we will find that you do not have a severe impairment and are,

27 therefore, not disabled." 20 C.F.R. § 416.920(c). As the ALJ determined that plaintiff had

28

1  multiple severe impairments at the second step of the sequential process, the second prong of
2  Listing 12.05(C) is also established.

3         3.      <u>Manifestation Before Age 22</u>

4        In order to satisfy the diagnostic description of "mental retardation" in the introductory
5  paragraph of listing 12.05, there must be evidence of "significantly subaverage general
6  intellectual functioning with deficits in adaptive functioning initially manifested during the
7  developmental period; i.e., the evidence demonstrates or supports onset of the impairment before
8  the age of 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.  The requirements of early onset and
9  the related reference to the "developmental period" are "'intended to limit coverage to an innate
10 condition, rather than a condition resulting from a disease or accident *in adulthood*.'" <u>Gomez v.
11 Astrue</u>, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010) (citation omitted) (emphasis added).  All
12 that is required is that the record contain some evidence that permits an inference that the
13 impairment existed before age 22 and is not of recent origin due to a traumatic event or other
14 changed circumstance.  <u>Id.</u>; <u>see, e.g.</u>, <u>Concha v. Astrue</u>, (09-cv-3044 PJW, 2010 WL 2569240, at
15 *2 (C.D. Cal. June 21, 2010) (claimant was categorically excluded from Listing § 12.05(C) since
16 his intellectual disability was attributable to injuries sustained in a fall while an adult).

17       Here, the evidence supports an inference that plaintiff's mental impairment manifested
18 itself during the developmental period.  As previously noted, plaintiff suffered a severe traumatic
19 brain injury in 1988 when he was 12 years old, having been struck by an automobile while he was
20 riding his bicycle.  AR 232.  This accident resulted in a 10-day coma, hospitalization beyond one
21 month, and extensive rehabilitation.  <u>Id.</u>  Furthermore, prior to the accident, plaintiff was enrolled
22 in special education classes; he continued with these classes following the accident and up
23 through graduation from high school.  AR 55-56.  This court has held that "evidence of
24 participation in special education classes permits an inference of an onset date for mental
25 retardation before age 22." <u>Reyna v. Astrue</u>, 2011 WL 2441906, at *5 (E.D. Cal. June 8, 2011)
26 (citing <u>Gomez</u>, 695 F. Supp. 2d at 1061); <u>see also</u> <u>Sorter v. Astrue</u>, 389 Fed. Appx. 620, 622 (9th
27 Cir. 2010) (observing a claimant "was in special education classes throughout his school years,
28 showing that his low intellectual functioning manifested prior to age 22"); <u>Maresh v. Barnhart</u>,

438 F.3d 897, 900 (8th Cir. 2006) (a claimant presented evidence that his mental retardation was manifested before age 22 when he attended special education classes, dropped out of school in the ninth grade, had difficulty with core subjects such as reading, and fought with other children). And lastly, both plaintiff and his mother claimed that, as a result of the 1988 accident, plaintiff's memory and ability to concentrate have suffered. See AR 57, 355. The medical record supports these statements. AR 208 (Dr. Molyn found mild impairment of plaintiff's ability to concentrate), 237 (Dr. Brooker's testing of intellectual functioning suggested cognitive slowing, consistent with a history of traumatic brain injury), 359 (Dr. Cross found mild learning disabilities). This evidence leads the court to conclude that this requirement of Listing 12.05(C) has also been met.

In summary, the ALJ erred in concluding that plaintiff does not meet listing 12.05(C). Plaintiff has a full scale IQ score of 70, his mental retardation manifested itself during his developmental period, and he had additional impairments imposing additional and significant work-related limitations of functioning. Plaintiff therefore satisfies the listing for mental retardation.[4]

B.   The Remand Decision

The decision to remand for further development of the record or for an award benefits is within the discretion of the court. See Reddick v. Charter, 157 F.3d 715, 728 (9th Cir. 1998); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Under the law of this Circuit, the court must "direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Varney v.

---

[4] The Commissioner argues that plaintiff cannot meet the requirements of Listing 12.05(C) because the ALJ determined at a later step of the sequential evaluation process that plaintiff could still perform the full range of work with certain non-exertional limitations. See Def.'s Cross-Mot. Summ. J. at 21-22. This argument is based on a misunderstanding of the law. A claimant who meets or equals a Listing is presumed disabled at step three without further inquiry, and there is no need for the ALJ to consider age, education, or work experience or to make an RFC determination. 20 C.F.R. § 416.920(a)(4)(iii). See Lester, 81 F.3d at 828; Fanning, 827 F.2d at 634; Huber v. Astrue, 2010 WL 4684021, at *5 (D. Ariz. Nov. 2, 2010) (citing Isham v. Astrue, 2010 WL 1957362, at *4 (E.D. Tenn. Jan. 13, 2010) ("If Plaintiff indeed had an impairment or combination of impairments that met or equaled the definition of mental retardation in § 12.05(C), then Plaintiff was under a disability and there was no need for the ALJ to consider her age, education, or work experience or to make a determination of RFC.")).

Sec'y of HHS, 859 F.2d 1396, 1399 (9th Cir. 1988) (citations omitted). "This rule recognizes the importance of expediting disability claims." Gustafson v. Astrue, 2:08-cv-0612 DAD, 2010 WL 1267787, at *6 (E.D. Cal. Mar. 31, 2010).

Plaintiff applied for supplemental security income nearly ten years ago, and the record is fully developed. Plaintiff has shown at step three of the evaluation process that he meets the listing for mental retardation. He is therefore "presumed disabled, and no further inquiry is necessary." Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991). The case will be remanded for an award of benefits. See Gustafson, 2010 WL 1267787, at *7; Frazier, 2010 WL 3910331, at *5.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted;
2. The Commissioner's cross-motion for summary judgment is denied;
3. The Clerk of the Court is directed to enter judgment in favor of plaintiff; and
4. This case is remanded to the Commissioner of Social Security for a calculation of benefits only.

DATED: March 4, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE